T.C. Memo. 2000-330


UNITED STATES TAX COURT


BERNARDUS A. P. DOBBE AND KLAZINA W. DOBBE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

HOLLAND AMERICA BULB FARMS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 17625-97, 17626-97.      Filed October 25, 2000.


<u>Joseph M. Wetzel</u>, <u>Gary R. DeFrang</u>, <u>Russell A. Sandor</u>,

<u>Michael C. Wetzel</u>, and <u>Darin S. Christensen</u>, for petitioners.

<u>Robert V. Boeshaar</u>, <u>Wesley F. McNamara</u>, and <u>Thomas J.</u>

<u>Travers</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency in the

Federal income tax of petitioners Bernardus A. P. Dobbe and

Klazina W. Dobbe (Mr. and Mrs. Dobbe or the Dobbes) of $34,614

for the taxable year 1993. Respondent also determined a deficiency in the Federal income tax of petitioner Holland America Bulb Farms, Inc. (Holland America), of $35,304 for its fiscal year ended September 30, 1993 (FYE 1993). Petitioners filed separate petitions contesting respondent's determinations. Because these cases present common issues of fact and law, they were consolidated for trial, briefing, and opinion pursuant to Rule 141(a).[1]

After concessions,[2] the issues for decision are:

(1) Whether Holland America is entitled to deduct the following expenses as ordinary and necessary business expenses under section 162(a): (a) $35,296 in landscaping expenses, (b) $34,246 in grocery expenses reimbursed to Mr. and Mrs. Dobbe, (c) $12,203 for the construction of a new solarium attached to Mr. and Mrs. Dobbe's residence, (d) miscellaneous expenses claimed

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]In the notice of deficiency, respondent disallowed a deduction of $3,926 by Holland America for a telephone system. Before trial, the parties agreed that Holland America's expenditure of $3,926 will be treated as a capital expense and that Holland America will be allowed depreciation deductions under secs. 167 and 168 using MACRS guidelines and a 7-year recovery period. Accordingly, Holland America's taxable income for FYE 1993 is increased $3,926 to reflect Holland America's concession concerning the deductibility of the expense under sec. 162(a) and decreased $982 to reflect the depreciation deduction conceded by respondent.

for electricity ($2,000), real estate property tax ($2,054), and hazard insurance premiums ($350) attributable to the Dobbe residence, and (e) $1,455 for the cost of a set of golf clubs given to a flower bulb broker/salesman;

(2) whether Mr. and Mrs. Dobbe are entitled to exclude reimbursement for groceries of $34,276 from their income under section 119(a); and

(3) whether the payment by Holland America of the expenses listed in (1) above resulted in constructive dividends to Mr. and Mrs. Dobbe.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.

Mr. and Mrs. Dobbe are married and resided at 1066 South Pekin Road, Woodland, Washington, on the date their petition was filed. Holland America's principal place of business was also 1066 South Pekin Road, Woodland, Washington, on the date its petition was filed.

Holland America, a subchapter C corporation incorporated in 1988 under the laws of the State of Washington, is engaged in the business of importing and growing flower bulbs, which it sells to cut flower producers. Since 1988, Mr. and Mrs. Dobbe have been the sole shareholders of Holland America. During the taxable

years at issue, Mr. Dobbe was the president of Holland America, and Mrs. Dobbe was the vice president, treasurer, and secretary of Holland America. Holland America used the accrual method of accounting and a fiscal year ended September 30 for all relevant years.

1066 South Pekin Road

Mr. and Mrs. Dobbe have owned the property located at 1066 South Pekin Road since approximately 1981. The property consists mostly of cropland but also includes some noncropland on which warehouses, a shed for storing machinery, various greenhouses, and Mr. and Mrs. Dobbe's personal residence are located. Holland America's main office is attached to the side of the Dobbe residence. The office and the residence share a common driveway. During 1993, Mr. and Mrs. Dobbe and their children lived in the residence year round.

From 1989 through September 30, 1991, two separate annual written leases were in effect. The "Building Lease Agreement" leased "that certain warehouse and shed" to Holland America "for the purpose of packaging, storing and maintaining bulbs and cut flowers, and maintaining equipment" for $3,500 per month. The "Lease of Crop Land" leased the cropland for horticulture purposes for $5,200 per month. From October 1, 1991, through September 30, 1993, a comprehensive annual written lease replaced the separate leases, but the categories of property covered by

the leases did not change.  Under the comprehensive lease in effect for the periods at issue here, Mr. and Mrs. Dobbe leased "those certain warehouses and shed" and "the crop land" at 1066 South Pekin Road.  None of the leases from 1988 through September 30, 1993, contained any reference whatsoever to Mr. and Mrs. Dobbe's residence, and their scope was not ambiguous.  The leases did not include the Dobbe residence.

Holland America's Shareholder Loans

Holland America has been financed, in part, by shareholder loans since its incorporation in 1988.  Holland America's liability to its shareholders was reflected in annual corporate minutes and evidenced by annual promissory notes.

Holland America deposited money each month into an accounts payable liability account (accounts payable account), which was used to account for both unpaid accrued rent under its lease and interest accruing on the promissory notes.  Mr. and Mrs. Dobbe reported both the interest and the rent as income on their Federal income tax returns.  Throughout each year, Holland America deducted funds from the accounts payable account as it made payments on behalf of Mr. and Mrs. Dobbe for personal expenses.  At the end of each accounting year, the balance of the accounts payable account was reconciled.  If the accounts payable account was positive (corporation owed money to Mr. and Mrs. Dobbe), Holland America would pay the balance to Mr. and Mrs.

Dobbe; the Dobbes would then lend the money back to Holland America to meet its business needs.  The amount lent back was added to the principal balance of the promissory notes payable by Holland America to Mr. and Mrs. Dobbe.  If the account balance was negative (shareholders owed money to corporation), because payments for Mr. and Mrs. Dobbe's personal expenses exceeded the rent and interest obligations, the balance was credited against the principal of the promissory notes.

As of September 30, 1992 and 1993, Holland America owed Mr. and Mrs. Dobbe $893,701 and $1,200,000, respectively.  The expenses at issue in this case were treated as business expenses and not as personal expenses for purposes of the accounting protocol described above.

1993 Deductions

Holland America claimed, and respondent disallowed, the following deductions for FYE 1993:

| Deduction | Amount disallowed |
| --- | --- |
| Advertising (landscaping) | $35,296 |
| Supplies (groceries) | 34,246 |
| Small tools (solarium) | 12,203 |
| Miscellaneous expenses | |
|     Property tax | 2,054 |
|     Hazard insurance premiums | 350 |
|     Electricity | 2,000 |
| Employee relations (golf clubs) | 1,455 |

Landscaping

In 1993, Holland America hired a landscaping service to improve the grounds at 1066 South Pekin Road with extensive new

landscaping.  The landscaping consisted of new grass, trees, bushes, shrubs, and flowers installed primarily near and surrounding Mr. and Mrs. Dobbe's residence.  Holland America paid $35,296 for the landscaping services and deducted this amount as an "advertising expense" on its FYE 1993 Federal income tax return.

### Groceries

On September 10, 1991, Holland America adopted a corporate policy that required its officers to be available for duty at all times in order to discharge their duties properly and to monitor all activities on the farm, including the maintenance of coolers to protect bulbs and the overseeing of bulb and flower harvesting activities.  The policy "required the corporation to pay for the officers meals and lodging in the performance of their duties." The policy was approved by Mr. and Mrs. Dobbe, acting in their capacity as corporate officers, and was memorialized in Holland America's corporate minutes.  The policy was renewed each year and was in effect throughout Holland America's FYE 1993.

Pursuant to the above policy, Holland America reimbursed Mr. and Mrs. Dobbe in November 1993 for all of Mr. and Mrs. Dobbe's groceries purchased from January 1989 through September 1993. Mrs. Dobbe had initially paid for the groceries by checks drawn on her personal checking account.  The amount reimbursed, $34,246, represented the cost of groceries for every meal

prepared or eaten by the Dobbe family at their home from January 1989 through September 1993. Only $6,417 of the amount reimbursed was for groceries purchased during Holland America's FYE 1993. Holland America paid the grocery reimbursement only to Mr. and Mrs. Dobbe and not to any other employees because the policy covered only corporate officers.

Holland America deducted the grocery reimbursement of $34,246 from its FYE 1993 Federal income tax return as "supplies". Mr. and Mrs. Dobbe excluded the reimbursed amount from their 1993 gross income.

Solarium

Before 1993, the Dobbe residence had only one solarium attached to it (old solarium). The old solarium is near the pool behind the house and has a sitting area and a hot tub. No tax deduction was ever taken for the old solarium.

During FYE 1993, Holland America paid $12,203 for the construction of a new solarium on the Dobbe residence (new solarium). The new solarium's door leads out of Mr. and Mrs. Dobbe's kitchen and dining area. Unlike the old solarium, the new solarium is built primarily of glass, and its floor is made of teakwood.

After the construction of the new solarium was completed, Holland America used it at some point during FYE 1993 to experiment with growing at least one new plant. The record,

however, does not reveal whether the new solarium was used for business purposes after September 30, 1993. On its FYE 1993 Federal income tax return, Holland America deducted the entire cost of the new solarium as a "small tools" expense.

Miscellaneous Expenses

During FYE 1993, Holland America paid various expenses associated with the property located at 1066 South Pekin Road, including electricity, property tax, and hazard insurance premiums.

Holland America paid and deducted the entire electricity bill associated with the property for FYE 1993. In FYE 1993, there were approximately six or seven separate electricity meters for various buildings on the property. There was only one electricity meter attached to Mr. and Mrs. Dobbe's residence. Holland America paid the $2,000 electricity bill attributable to the Dobbe residence, as shown by a separate electricity meter, and deducted the entire amount on its Federal income tax return.

Holland America also paid, and claimed a deduction for, the entire property tax associated with the property at 1066 South Pekin Road, including that portion determined to be associated with Mr. and Mrs. Dobbe's residence ($2,054).

Lastly, Holland America paid, and claimed a deduction for, all hazard insurance premiums associated with the property

located at 1066 South Pekin Road. Premiums attributable to Mr. and Mrs. Dobbe's residence ($350) were included in the amount deducted.

### Deduction for Golf Clubs

During FYE 1993, Holland America purchased a set of golf clubs for Rinus Heemskerk, a flower bulb salesman/broker for Holland America who worked in The Netherlands. As a commissioned broker, Mr. Heemskerk received sales commissions from both Holland America, as purchaser, and from the seller. The sales commissions were based on sale prices and were included in the purchase prices Holland America paid for the bulbs.

Holland America did not issue a Form W-2, Wage and Tax Statement, or a Form 1099, Miscellaneous Income, to Mr. Heemskerk for the golf clubs. Holland America purchased the golf clubs for Mr. Heemskerk as an incentive for future performance and in appreciation for his past service to the company. Holland America deducted the entire cost of the golf clubs, $1,455, as an "Employee Relations" expense or "Customer Ref" expense.

OPINION

I. <u>Was Mr. and Mrs. Dobbe's Residence Leased to Holland America During and Before FYE 1993?</u>

In support of their position that Holland America was entitled to deduct the grocery expense reimbursement and the various expenses paid with respect to the Dobbe residence, petitioners argue that the Dobbe residence was leased to Holland

America during FYE 1993 and prior periods.  Petitioners offered testimony from Mr. and Mrs. Dobbe and from their accountant to prove that (1) the written leases in effect during FYE 1993 and prior years included the Dobbe residence, and (2) even if the written leases did not include the residence, there was an oral lease covering the residence during FYE 1993 and prior years. Respondent objected to the testimony, citing Washington State's parol evidence rule.  We conditionally admitted the testimony over respondent's objection but reserved final ruling and directed the parties to brief the issue.  Upon consideration of the applicable law and the evidence in the record, we conclude that the testimony is admissible solely on the question of whether petitioners entered into an oral lease covering the residence.

A.  The Parol Evidence Rule

It is well settled that the State law applicable to the contract at issue governs whether parol evidence is admissible. See Estate of Craft v. Commissioner, 68 T.C. 249, 262 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979).  The parties agree that Washington State law applies to the leases at issue in this case.  Under Washington State law, the general rule is that "parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake."  Berg v. Hudesman,

801 P.2d 222, 229 (Wash. 1990). However, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." Id. at 228. For parol evidence to be admissible, it is not necessary that we first find that the contract is ambiguous. See id. at 230. The Supreme Court of Washington clarified that

> as stated in Olsen v. Nichols, 86 Wash. 185, 149 P. 668, parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument. It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible. [Id. at 229-230; emphasis added.]

In Berg, the Supreme Court of Washington made it clear that this rule authorizes the use of extrinsic evidence only to interpret the meaning of the words of a contract, and "not for the purpose of showing intention independent of the instrument." Id.; see also Hollis v. Garwall, Inc., 974 P.2d 836, 842-847 (Wash. 1999); In re Marriage of Schweitzer, 937 P.2d 1062, 1066 (Wash. 1997).

- 13 -

In Ban-Co Inv. Co. v. Loveless, 587 P.2d 567, 573 (Wash. Ct. App. 1978), the Washington Court of Appeals emphasized that to be admitted under the parol evidence rule, parol evidence should not vary or contradict that which has been reduced to writing but must be additional to and consistent with the contents of the document. The court stated:

> People have the right to make their agreements partly oral and partly in writing, or entirely oral or entirely in writing; and it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not. That is a question of fact. [Id. at 572.]

In this case, the disputed testimony was offered not to prove the circumstances under which the written leases were executed but rather to prove that the parties to the leases intended to include the Dobbe residence in the leases. Petitioners argued that the leases were not complete and that more property was covered by the lease agreements than was explicitly stated therein. Petitioners argued, in the alternative, that the testimony proves that petitioners agreed upon a "second oral lease" leasing the Dobbe residence to Holland America.

Because the disputed testimony was offered, in part, to expand the scope of the leases in a manner inconsistent with and beyond that clearly stated therein, in violation of Washington State's parol evidence rule, see Berg v. Hudesman, supra, we

agree with respondent that the parol evidence rule prevents petitioners from using the testimony to expand the scope of the written leases. We nevertheless conclude that the disputed testimony is admissible on the question of the existence of a separate oral lease, and we overrule respondent's objection.

B. <u>The Alleged Oral Lease</u>

To overcome the fact that the written leases did not encompass the Dobbe residence, petitioners contended at trial that there was also an oral lease by which Mr. and Mrs. Dobbe leased their residence to Holland America during 1993 and prior years. The only proof in support of petitioners' contention, however, was the testimony of Mr. and Mrs. Dobbe and their accountant that Mr. and Mrs. Dobbe intended to lease the residence to Holland America. Petitioners conceded at trial that no additional rent was paid by Holland America for the residence and offered no testimony whatsoever regarding the other terms and conditions normally included in a valid and enforceable lease.

Under Washington State law, a valid lease must identify the property leased, the parties to the lease, and the terms and conditions of the lease, including the rent or other consideration paid or to be paid for the leasehold interest. See <u>Emrich v. Connell</u>, 716 P.2d 863, 867 (Wash. 1986). Moreover, Washington State's statute of frauds requires that an agreement to lease for more than 1 year be in writing. See <u>Family Med.</u>

Bldg., Inc. v. State, Dept. of Soc. & Health Servs., 702 P.2d 459, 461 (Wash. 1985).

We are not required to accept the self-serving testimony of a taxpayer or witnesses closely aligned with the taxpayer's position in circumstances where the testimony is uncorroborated by other reliable sources and is not credible. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The dearth of credible evidence in support of petitioners' position that an oral lease covered the Dobbe residence during the relevant periods and the failure of petitioners to prove that any rent was paid for the alleged oral lease compel a conclusion that the Dobbe residence was not leased to Holland America. After evaluating the facts in this record and weighing them against the testimony of Mr. and Mrs. Dobbe and their accountant, we hold that petitioners have failed to prove that Mr. and Mrs. Dobbe orally leased their residence to Holland America at any time from 1989 through FYE 1993. See Rule 142(a); cf. Ban-Co Inv. Co. v. Loveless, supra at 573 ("the existence of the oral agreement was proven by substantial evidence (including documentary evidence) other than merely the testimony of the parties alleging it").

## II. Was Holland America Entitled To Deduct Various Expenses as Ordinary and Necessary Business Expenses?

Section 162(a) permits a taxpayer to deduct expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business. Deductions are strictly a matter of

legislative grace; Holland America bears the burden of substantiating claimed deductions. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933).

In order for Holland America to meet its burden of proof, it must prove that the expenses deducted (1) were paid or incurred during the taxable year, (2) were incurred to carry on its trade or business, and (3) were ordinary and necessary expenditures of the business. See sec. 162(a); Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971). An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses are not deductible. See sec. 262(a).

We hold that none of the expenses in dispute, except the cost of the golf clubs, was properly deducted under section 162(a). Our reasons are set forth below.

A. In General

Petitioners adamantly asserted an aggressive and nondiscerning position regarding the disputed expenses deducted

by Holland America. They insisted that Mr. and Mrs. Dobbe leased to Holland America the entire property located at 1066 South Pekin Road, including the Dobbe residence. By reason of its alleged leasehold interest in the Dobbe residence, Holland America claimed it furnished lodging and meals on its business premises to Mr. and Mrs. Dobbe and is entitled to deduct 100 percent of Mr. and Mrs. Dobbe's personal lodging and grocery costs as its business expenses.

As we previously held, the written leases in effect for periods prior to October 1, 1993, did not cover the Dobbe residence. Although the record establishes that Mr. and Mrs. Dobbe set aside a portion of their residence as Holland America's business office, the record is devoid of any persuasive evidence establishing that any part of the Dobbe residence actually was rented by Holland America and, in particular, that any of the rent paid by Holland America to Mr. and Mrs. Dobbe was attributable to the residence. With this framework in mind, we address each of the disputed expense categories.

B. Landscaping ("Advertising" Expense)

Petitioners argued that the entire landscaping expense, incurred primarily to install landscaping near and surrounding Mr. and Mrs. Dobbe's residence, was properly deducted under section 162. According to petitioners, the new landscaping was necessary to improve the "first impression" of Holland America's

business and allowed Holland America to display and promote its products to the public. Respondent contends the majority of the landscaping was done to improve the grounds surrounding Mr. and Mrs. Dobbe's residence, including the front, side, and back yards and the area near the outdoor swimming pool; therefore, the improvements made to property owned by Mr. and Mrs. Dobbe primarily benefited Mr. and Mrs. Dobbe personally and are not deductible as a business expense.[3]

Under appropriate circumstances, landscaping expenses may be deductible when the expenses legitimately are connected to the taxpayer's trade or business and the requirements for deductibility otherwise are met. See Hefti v. Commissioner, T.C. Memo. 1988-22, affd. 894 F.2d 1340 (8th Cir. 1989); Rhoads v. Commissioner, T.C. Memo. 1987-335. When, however, a corporation makes an expenditure that primarily benefits the corporation's

---

[3]In the notice of deficiency, respondent determined, in the alternative, that, if any of the landscaping costs are ordinary and necessary business expenses, the expense is a capital expenditure that is not deductible but is subject to depreciation under the MACRS guidelines with a 15-year recovery period. See Alabama-Ga. Syrup Co. v. Commissioner, 36 T.C. 747 (1961), revd. on other grounds sub nom. Whitfield v. Commissioner, 311 F.2d 640 (5th Cir. 1962). The record does not contain any evidence as to the useful lives of the various installations, nor does the record disclose how Holland America had any depreciable interest in the landscaping. Holland America did not own the property on which the landscaping was installed, nor did it have a leasehold interest covering that part of the property. We need not decide, however, whether the landscaping expense must be capitalized because of our holding, infra, that the landscaping was not an ordinary and necessary business expense.

shareholders and only tangentially benefits the corporation's business, the amount of the expenditure may be taxed to the shareholder as a constructive dividend and is not deductible under section 162. See Hood v. Commissioner, 115 T.C. ___, ___ (2000) (slip op. at 13-14); Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980); American Insulation Corp. v. Commissioner, T.C. Memo. 1985-436.

We accept, for the sake of argument, that the appearance of a business and its grounds can contribute to the success of the business. We also acknowledge that Holland America's clients visited the farm regularly. Most, if not all, of the landscaping improvements, however, were installed near and surrounding Mr. and Mrs. Dobbe's residence. The residence and its grounds were owned by Mr. and Mrs. Dobbe and were not leased to Holland America. Although some of the improvements could be seen by Holland America's customers who visited the farm for business purposes,[4] the incidental benefit to the corporation does not trump the primarily personal benefit to Mr. and Mrs. Dobbe.

Petitioners did not introduce any evidence to demonstrate how much of the landscaping cost, if any, could be allocated to Holland America's leasehold interest. Moreover, petitioners

---

[4]Some of the improvements, including improvements by the outdoor swimming pool and areas on the back and side of the residence, barely were visible to customers entering the driveway.

offered little evidence that the landscaping improvements were appropriate or necessary to the maintenance and development of Holland America's business.  See Commissioner v. Heininger, 320 U.S. at 471.  Drive-by customers accounted for a very small percentage of Holland America's sales, and there is no evidence in the record demonstrating that sales to Holland America's regular customers increased in any material way as a result of the improvements.  At trial, Martin Meskers, a flower grower from Oregon who has purchased bulbs from Holland America since its incorporation and spends about $500,000 per year at Holland America, testified that the new landscaping was nice and gave a good first impression.  Mr. Meskers admitted, however, that he still would spend the same amount per year even if the landscaping was not as nice because Holland America carries the product he needs.

We hold that petitioners have not proven that the landscaping expenses were ordinary and necessary business expenses deductible by Holland America under section 162.

C.  Groceries ("Supplies" Expense)

In November 1993, Holland America reimbursed Mr. and Mrs. Dobbe in the amount of $34,246 for all groceries purchased for every meal prepared or eaten by the Dobbe family at their home from January 1989 through September 1993.  Holland America deducted the entire reimbursement as a "supplies" expense on its

FYE 1993 Federal income tax return.[5]  Respondent disallowed the deduction.  We uphold respondent's determination.

A corporate policy promulgated for the first time in November 1991 required Holland America's corporate officers, Mr. and Mrs. Dobbe, to be present on the farm at all times to monitor activities and deal with problems on the farm.  That policy also required Holland America to furnish lodging and meals to Mr. and Mrs. Dobbe.  Although the policy contained no provision making it retroactive to 1989 or authorizing Holland America to reimburse Mr. and Mrs. Dobbe for their grocery expenses, Holland America relied on the policy to justify reimbursing Mr. and Mrs. Dobbe for all their groceries purchased from January 1989 through September 1993.  Petitioners conceded that the groceries were consumed by Mr. and Mrs. Dobbe, their children, and occasional business clients and visitors.[6]

---

[5]Of the $34,246 reimbursed by Holland America for the cost of groceries, only $6,417 was for groceries purchased from Oct. 1, 1992, through Sept. 30, 1993.  Respondent argues that, even if the corporate policy covers grocery reimbursement and supports a deduction for some part of the reimbursement, Holland America is not entitled to deduct on its FYE 1993 return the cost of groceries purchased in prior fiscal years.  We do not need to address this issue in light of our holding.

[6]Holland America has not argued that sec. 274(n) applies, and Mr. and Mrs. Dobbe have not argued that the reimbursement they received for the cost of their groceries is excluded from their income under sec. 132 as a "de minimis fringe" benefit. See Boyd Gaming Corp. v. Commissioner, 177 F.3d 1096 (9th Cir. 1999), revg. T.C. Memo. 1997-445.

Generally, meal expenditures are treated as personal expenses and are not deductible for Federal income tax purposes. See sec. 262; Rhoads v. Commissioner, T.C. Memo. 1987-335; Fenstermaker v. Commissioner, T.C. Memo. 1978-210; sec. 1.262-1(a) and (b)(5), Income Tax Regs. Only those meal expenditures that satisfy the requirements for deductibility under section 162(a) may be deducted as business expenses.

Holland America has failed to prove that its reimbursement of Mr. and Mrs. Dobbe's grocery expenses, covering a 5-year period, was anything more than the payment of a personal expense of its shareholders-officers. Although Holland America contended that the reimbursement met the requirements of section 162(a), it did not offer any credible evidence to show that the reimbursement was ordinary or necessary under the circumstances involved here. Mr. and Mrs. Dobbe lived on the farm. They bought groceries and cooked their meals in their own home. Although Mr. and Mrs. Dobbe were involved in the day-to-day operation of the farm and may have eaten meals occasionally while addressing issues on the farm, they did so for their own convenience. The mere possibility that an emergency may arise on the farm does not convert a personal expense into a business expense. See Rhoads v. Commissioner, supra.

Holland America had other employees in addition to Mr. and Mrs. Dobbe, yet the corporate policy was limited solely to Mr.

and Mrs. Dobbe. Holland America did not demonstrate that Mr. and Mrs. Dobbe were the only employees available for or capable of dealing with farm emergencies or that its reimbursement of Mr. and Mrs. Dobbe's grocery expenses was necessary to ensure that competent employees would be available to deal with such emergencies during customary mealtimes.

Although business customers occasionally stayed overnight at the farm and some of the groceries presumably were consumed by them,[7] Holland America has not argued that the amount paid as reimbursement must be apportioned to reflect business and personal use. Rather, Holland America seeks to deduct the cost of all groceries consumed by Mr. and Mrs. Dobbe, their family, and visitors, regardless of whether the groceries were consumed in connection with a legitimate business activity. Holland America concededly did not keep any records that would permit us to isolate those costs incurred for business, if any. Without a more definitive record, any allowance would amount to unguided largess. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Reynolds v. Commissioner, T.C. Memo. 2000-20; Williams v. Commissioner, T.C. Memo. 1998-93. Accordingly, we

---

[7]Neither Holland America nor Mr. and Mrs. Dobbe maintained any records of the people who visited the Dobbe residence and/or consumed meals there allegedly for business purposes. See sec. 274(d).

uphold respondent's determination disallowing the entire $34,246 deduction.

D.  Solarium ("Small Tools" Expense)

Holland America spent $12,203 to construct a new solarium attached to the Dobbe residence and deducted the entire cost of the new solarium as a "small tools" expense.  Petitioners argue that the new solarium was used solely for business purposes in the year the deduction was taken and that Holland America greatly benefited from the construction of the new solarium because the expense enabled it to experiment with and develop a new product, the medicinal herb Echinacea.  Thus, petitioners contend, the expense properly was deductible under section 162(a) or, in the alternative, the new solarium was deductible as an experimental procedure under section 174(a).  Respondent contends the new solarium benefited Mr. and Mrs. Dobbe personally and added value to their home; therefore, the new solarium was primarily a

personal expense, which is not deductible under section 162(a).[8] We agree with respondent.

Although Holland America used the solarium to experiment with growing Echinacea at some point during FYE 1993, petitioners failed to convince us that the new solarium was used primarily for business during FYE 1993 or that it was used primarily for business purposes thereafter. Petitioners produced several photographs which showed the new solarium almost completely empty, demonstrating neither a business purpose nor a personal purpose for the new solarium. The record was remarkably silent regarding the business use of the new solarium after September 30, 1993. Although both Mr. and Mrs. Dobbe testified that the new solarium was not used for personal purposes in 1993, we did not find their testimony convincing on this point. We are not required to accept petitioners' self-serving, undocumented testimony. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir.

---

[8]In his notice of deficiency respondent determined in the alternative that if any part of the solarium costs was incurred primarily to benefit the business of Holland America, it is a capital expenditure that is not deductible but is subject to depreciation under the MACRS guidelines with a 27.5-year recovery period. The record does not contain any evidence as to the useful life of the solarium, nor does the record disclose how Holland America had any depreciable interest in the solarium. Holland America did not own the residence that the solarium improved, nor did it have a leasehold interest with respect to the residence. We need not decide whether the solarium expense must be capitalized because of our holding, infra, that the cost of constructing the solarium was not incurred for the primary benefit of Holland America.

1964), affg. 41 T.C. 593 (1964); Tokarski v. Commissioner, 87 T.C. at 77; Williams v. Commissioner, supra. We find, therefore, that petitioners have failed to prove that the new solarium was constructed and used primarily for business reasons, and we sustain respondent's determination disallowing the deduction.[9]

E. Miscellaneous Expenses

Respondent disallowed miscellaneous deductions for expenses paid by Holland America attributable to the Dobbe residence. During FYE 1993, Holland America claimed a deduction for the entire amount of property tax, hazard insurance premiums, and the electricity bill associated with the property at 1066 South Pekin Road. After an examination, respondent determined the following amounts to be attributable to the Dobbe residence: Property tax ($2,054), hazard insurance premiums ($350), and electricity ($2,000).[10]

---

[9]Petitioners asserted, in the alternative, that the true purpose of the new solarium was to enable Holland America to conduct growing experiments; consequently, the expenditure qualified as a research and experimental expenditure under sec. 174(a). See sec. 263(a)(1)(B); sec. 1.174-2, Income Tax Regs. Except for a brief, one-sentence mention of sec. 174(a), however, Holland America has not presented any meaningful argument based on sec. 174(a), nor has it proved that it meets the requirements of sec. 174(a).

[10]Respondent's witness, Susan Signor, a revenue agent, testified to the above amounts. At trial, petitioners' attorney objected to the introduction of this evidence on the grounds of best evidence, competence, and relevance; however, petitioners did not dispute the accuracy of the amounts either at trial or on brief.

Respondent contends that the miscellaneous expenses attributable to the Dobbe residence were nondeductible personal expenses of Mr. and Mrs. Dobbe and that Holland America conferred an economic benefit on Mr. and Mrs. Dobbe by paying those expenses. Petitioners argue the miscellaneous deductions were ordinary and necessary business expenses because Holland America leased the entire farm, including the residence, for business purposes. We agree with respondent that Holland America is not entitled to deduct the expenses attributable to Mr. and Mrs. Dobbe's residence.

The expenses of maintaining a household, including utilities, insurance premiums, and property tax, are personal living expenses and are not deductible. See sec. 262(a); sec. 1.262-1(b)(2) and (3), Income Tax Regs. As we held earlier in this opinion, the residence was not leased to Holland America and, with the exception of the office, was not used for business purposes. Because the miscellaneous expenses were personal and were unrelated to the business of Holland America, we sustain respondent's determination that the above amounts are not deductible as ordinary and necessary business expenses.

F. Golf Clubs ("Customer Relations" Expense)

Holland America claimed a deduction of $1,455, which it spent to purchase a set of golf clubs for Rinus Heemskerk, a flower bulb salesman/broker in The Netherlands. Holland America

contends the entire cost of the golf clubs is deductible as an ordinary and necessary business expenditure because it purchased the golf clubs as a sales incentive and for services rendered by Mr. Heemskerk. Respondent argues the golf clubs are characterized more properly as a gift than as compensation; thus, pursuant to section 274(b), the deduction should be limited to $25, and the remaining cost of the golf clubs should be disallowed.

Section 274(b) provides that no deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that the expense exceeds $25. Section 274(b) and related regulations flatly disallow deductions for business gifts greater than $25. See Sanford v. Commissioner, 50 T.C. 823, 830 (1968), affd. 412 F.2d 201 (2d Cir. 1969). The requirements imposed by section 274(b) are in addition to the requirements imposed by section 162(a). Holland America has the burden of proving initially that its expenditure was an ordinary and necessary expense, was proximately related to its trade or business, and was not for a business gift subject to the restrictions of section 274(b). See sec. 274(d); Sanford v. Commissioner, supra at 826. Whether the golf clubs were given to Mr. Heemskerk as a gift or for services rendered must be determined from all the facts and circumstances. See St. John v. Commissioner, T.C. Memo. 1970-238.

A voluntarily executed transfer of property by one to another, without any consideration or compensation therefor, is not necessarily a gift within the meaning of section 274(b). See Commissioner v. Duberstein, 363 U.S. 278, 285 (1960); Olk v. United States, 536 F.2d 876, 877-878 (9th Cir. 1976). If the transfer "proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, * * * it is not a gift." Commissioner v. Duberstein, supra at 285 (citations omitted). A gift, in the statutory sense, "proceeds from a 'detached and disinterested generosity' * * * 'out of affection, respect, admiration, charity or like impulses.'" Commissioner v. Duberstein, supra at 285 (citations omitted); see also Olk v. United States, supra. The intention of the payor controls whether the payment is characterized as a gift. See Commissioner v. Duberstein, supra at 286; Bogardus v. Commissioner, 302 U.S. 34, 43 (1937). The question of whether a payment is a gift is a question of fact to be determined on the basis of the facts of each case. See Commissioner v. Duberstein, supra at 290; Woody v. United States, 368 F.2d 668, 670 (9th Cir. 1966).

In his direct testimony at trial, Mr. Dobbe was asked: "And so when you purchased these golf clubs, was it in the form of compensation to encourage Mr. Heemskerk to continue to do a good job?" Mr. Dobbe responded: "I would say incentive to continue

to do a good job."  On cross-examination, Mr. Dobbe testified that he regularly paid Mr. Heemskerk a commission for his efforts in purchasing bulbs for Holland America.  When Mr. Dobbe was asked whether the golf clubs were related to a particular purchase, he responded:

> They--I knew he loved the game of golf in whatever free time he had, and it would be a tremendous treat to receive a set of clubs from the United States, and for his service and for his unbelievable importance to our business, I felt it was an incredible incentive for what he up to that point meant for our business and what he hopefully was going to continue to mean for our business.

We conclude that Holland America purchased the golf clubs for Mr. Heemskerk as an incentive for future performance and in appreciation for his past services to the company.  Thus, Holland America did not give the golf clubs to Mr. Heemskerk out of a "detached and disinterested generosity"; rather, Holland America anticipated receiving an economic benefit in the future.  See Commissioner v. Duberstein, supra at 285; Olk v. United States, supra at 877-878.

Accordingly, we hold that the golf clubs were not a "gift" within the meaning of section 274(b).  We further hold that Holland America has met its burden of establishing that the cost of the golf clubs was an ordinary and necessary business expense deductible under section 162(a).

III.  Were Mr. and Mrs. Dobbe Entitled To Exclude the Amount of Reimbursement for Groceries From Their Income Under Section 119(a)?

Under certain conditions, meals furnished for the convenience of the employer are excludable from the gross income of the employee.  See sec. 119(a) and (b).  The value of meals furnished to an employee by his employer is excluded from an employee's gross income if two elements are met:  (1) The meals are furnished on the business premises of the employer, and (2) the meals are furnished for the convenience of the employer.  See sec. 119(a); sec. 1.119-1(a)(1), Income Tax Regs.  Meals must be provided in kind.  See Commissioner v. Kowalski, 434 U.S. 77, 84 (1977); Tougher v. Commissioner, 51 T.C. 737, 744-746 (1969), affd. 441 F.2d 1148 (9th Cir. 1971).

Mr. and Mrs. Dobbe argue they are entitled to exclude the grocery reimbursement from their income under section 119(a).  Respondent disagrees, arguing that, in order to be excludable under section 119(a), meals must be provided in kind and on the business premises of the employer.  Respondent disallowed the exclusion, and we uphold respondent's determination.

The grocery reimbursement is not excludable under section 119(a) for two reasons.  First, our holding that the leases did not include Mr. and Mrs. Dobbe's residence leads to the conclusion that the meals in question were furnished to Mr. and Mrs. Dobbe in their personal residence and not on Holland

America's business premises as required by section 119(a).[11]  See
sec. 1.119-1(a)(1), Income Tax Regs.  Second, Mr. and Mrs. Dobbe
received cash reimbursement for their grocery expenses, not in-
kind meals.  By its terms, section 119(a) covers meals furnished
by the employer and not cash reimbursements.  See Commissioner v.
Kowalski, supra; Tougher v. Commissioner, supra; Harrison v.
Commissioner, T.C. Memo. 1981-211; Koven v. Commissioner, T.C.
Memo. 1979-213; McDowell v. Commissioner, T.C. Memo. 1974-72.

Petitioners concede on brief that Mr. and Mrs. Dobbe
purchased the groceries and were reimbursed by Holland America,
but they contend that purchasing the groceries was a "separate
transaction".  Petitioners argue that a corporation can act only
through its agents and that Mrs. Dobbe, acting as an agent of
Holland America, purchased the groceries, prepared the meals, and
provided the meals to the officers of the corporation.
Petitioners contend that this sort of "separate transaction"
amounts to receiving in-kind meals and, therefore, qualifies for
the exclusion under section 119(a).

---

[11]Cf. Boyd Gaming Corp. v. Commissioner, 177 F.3d at 1099
(employer's eating facilities were located on the business
premises); Harrison v. Commissioner, T.C. Memo. 1981-211 ("We
have found as a fact that the meals in question were served and
consumed on the farm, which was the business premises of the
employer, HFL."); McDowell v. Commissioner, T.C. Memo. 1974-72
("There is no question that the meals and lodging were furnished
on the business premises of the employer-corporation, the
ranch.").

In support of their argument, petitioners cite McDowell v. Commissioner, supra. In McDowell, the Commissioner argued that the taxpayers were not entitled to exclude the cost of meals from their income because they were prepared by the taxpayers from food purchased at the grocery store. In McDowell, we declined to consider the Commissioner's argument, which was raised for the first time in the Commissioner's reply brief, because there was no evidence in the record as to preparation of the meals, and "the rudimentary principles of equity and justice forbid our consideration of this argument." Id. We did not address whether cash reimbursements for groceries provided under similar circumstances qualified under section 119(a) as in-kind meals. We allowed the exclusion, noting there was no question that the meals were furnished on the business premises of the employer-corporation and the meals were provided for the convenience of the employer-corporation. Our decision in McDowell is distinguishable from this case.

Petitioners also rely on Caratan v. Commissioner, 442 F.2d 606 (9th Cir. 1971), revg. 52 T.C. 960 (1969), Johnson v. Commissioner, T.C. Memo. 1985-175, and J. Grant Farms, Inc. v. Commissioner, T.C. Memo. 1985-174. The sole issue in each of these cases was whether the taxpayers were required to accept lodging furnished to them as a condition of their employment as required by section 119(a). In each of these cases, the parties

agreed the lodging was provided on the employer's premises. These cases provided little or no insight as to whether the grocery reimbursement should be excluded from Mr. and Mrs. Dobbe's income under section 119(a) and, thus, do not inform our analysis.

In this case, Mr. and Mrs. Dobbe did not receive in-kind meals.  Mr. and Mrs. Dobbe received cash reimbursement for all grocery expenses dating back to January 1989.  Although the corporate policy required Holland America to "pay for the officers meals", it paid grocery reimbursement instead.  The groceries were consumed by anyone dining in the residence, including Mr. and Mrs. Dobbe's children.  The Dobbe family purchased and consumed the groceries as any other family might have done.  Mr. and Mrs. Dobbe, however, took advantage of the tax laws to obtain nontaxable reimbursement from their corporation for the entire cost of their daily food consumption. Like the taxpayers in Simpson v. Commissioner, T.C. Memo. 1997-223, "petitioners want the Government to subsidize their daily food consumption."  Mr. and Mrs. Dobbe are not entitled to such a benefit.  See sec. 262(a).  We hold that Mr. and Mrs. Dobbe are not entitled to exclude the cash reimbursement for groceries from their income under section 119(a).

IV.  Did Holland America's Payment of the Expenses Discussed Above Result in a Constructive Dividend to Mr. and Mrs. Dobbe?

Respondent determined that Holland America's payment of the landscaping, grocery reimbursement, solarium addition, and miscellaneous expenses resulted in economic gain, benefit, or income to Mr. and Mrs. Dobbe as individuals, which is taxable to them as a constructive dividend.  Petitioners contend the expenditures primarily benefited Holland America's business and not Mr. and Mrs. Dobbe; in the alternative, they contend that, if we hold that Holland America's payment of the expenses primarily benefited Mr. and Mrs. Dobbe, then those payments must be treated as loan repayments rather than constructive dividends.  We disagree and hold that Holland America's payment of the disputed expenses resulted in constructive dividends to Mr. and Mrs. Dobbe.

Dividends are includable in a taxpayer's gross income.  See sec. 61(a)(7).  Section 316(a) defines a dividend as any distribution of property made by a corporation to its shareholders out of its earnings and profits.  "Where the corporation confers an economic benefit on a shareholder without the expectation of repayment, that benefit may be a constructive dividend, taxable to the shareholder."  Spera v. Commissioner, T.C. Memo. 1998-225; see also sec. 61(a)(7); Magnon v. Commissioner, 73 T.C. at 993-994; American Insulation Corp. v. Commissioner, T.C. Memo. 1985-436.

The test for a constructive dividend is twofold:  (1) The expense must be nondeductible to the corporation; and (2) it must represent some economic gain, benefit, or income to the owner-taxpayer.  See <u>Meridian Wood Prods., Inc. v. United States</u>, 725 F.2d 1183, 1191 (9th Cir. 1984).  "The crucial test * * * is whether 'the distribution was primarily for shareholder benefit.'"  <u>Spera v. Commissioner</u>, <u>supra</u> (quoting <u>Loftin & Woodard, Inc. v. United States</u>, 577 F.2d 1206, 1215 (5th Cir. 1978)); <u>Hood v. Commissioner</u>, 115 T.C. at ___ (slip op. at 13).  "'[W]hether or not a corporate distribution is a dividend or something else, such as a gift, compensation for services, repayment of a loan, interest on a loan, or payment for property purchased, presents a question of fact to be determined in each case.'"  <u>Hardin v. United States</u>, 461 F.2d 865, 872 (5th Cir. 1972) (quoting <u>Lengsfield v. Commissioner</u>, 241 F.2d 508, 510 (5th Cir. 1957), affg. T.C. Memo. 1955-257); see also <u>Commissioner v. Gordon</u>, 391 U.S. 83, 88-89 (1968).

We already have determined that all of the expenses at issue, with the exception of the golf clubs, are nondeductible to Holland America; therefore, the first element of the test is met. As explained below, the second element of the test, whether Mr. and Mrs. Dobbe received an economic benefit from the expenditures made by Holland America, is also satisfied.

A.  <u>The Cost of the New Solarium and the Landscaping</u>

Construction services performed by a corporation that improve property owned by its shareholder may constitute a constructive dividend.  See <u>Spera v. Commissioner</u>, <u>supra</u> (citing <u>Magnon v. Commissioner</u>, <u>supra</u>).  To make this determination, we must look at all the facts and circumstances surrounding the expenditures, including the nature of the improvements and evidence that the shareholder benefited from the corporate expenditures.  See <u>Spera v. Commissioner</u>, <u>supra</u>.[12]

The landscaping improvements clearly improved Mr. and Mrs. Dobbe's property.  The new solarium also added value to the property.  Although Holland America claims it benefited from the use of the new solarium in the year it was constructed, it has not shown that whatever short-term incidental benefit it received from its limited business use of the new solarium outweighed the primarily personal benefit resulting from the addition of the solarium to Mr. and Mrs. Dobbe's residence.  The new solarium is

---

[12]As a general rule, improvements made by a lessee (Holland America) to a leasehold estate do not result in income to the lessor (Mr. and Mrs. Dobbe) in the year of the improvement or upon termination of the lease.  See sec. 109; <u>M.E. Blatt Co. v. United States</u>, 305 U.S. 267 (1938); <u>Bardes v. Commissioner</u>, 37 T.C. 1134 (1962); <u>Spera v. Commissioner</u>, T.C. Memo. 1998-225; <u>Weigel v. Commissioner</u>, T.C. Memo. 1996-485.  In this case, however, we have determined that the improvements on the land were made to property that was not leased to Holland America; i.e., the landscaping services and solarium construction were performed on land surrounding and including the Dobbe residence, which was not included in the lease.  The general rule, therefore, is not applicable here.

near the outdoor pool and is connected to the old solarium, which was used solely for personal reasons. Mr. and Mrs. Dobbe have failed to prove that they did not receive an economic benefit from the construction of the new solarium or that its primary use was for business purposes. The cost of the new solarium and the landscaping must be included in Mr. and Mrs. Dobbe's income as a dividend. See secs. 61(a)(7), 316.

B. The Grocery Expense Reimbursement

The grocery expense reimbursement also represented economic gain to Mr. and Mrs. Dobbe. Since Mr. and Mrs. Dobbe are not entitled to exclude the reimbursement for groceries from their income under section 119, they must include the entire reimbursement in their income as a dividend. See secs. 61(a)(7), 316.

C. Miscellaneous Expenses

Holland America's payment of the miscellaneous expenses attributable to Mr. and Mrs. Dobbe's residence also directly benefited Mr. and Mrs. Dobbe. Utilities, insurance, and property taxes for a taxpayer's personal residence are inherently personal expenses, are not normally subsidized by a corporation, and are usually drawn from a taxpayer's personal funds. Payment of a shareholder's personal expenses by a corporation provides an economic benefit to the shareholder and is taxable as a constructive dividend to the extent of earnings and profits. See

Spera v. Commissioner, T.C. Memo. 1998-225.  Holland America's
payment of the miscellaneous expenses resulted in a constructive
dividend to Mr. and Mrs. Dobbe as determined by respondent.  See
secs. 61(a)(7), 316.

D.  The Shareholder Loan Account

Mr. and Mrs. Dobbe argue that, even if we hold that payment
of the expenses in question benefited them financially, the
payments should be treated as corporate repayments of their
shareholder loans.  Petitioners rely on Creske v. Commissioner,
T.C. Memo. 1988-574, to support their position that prior loans
from a shareholder to a corporation are sufficient consideration
to avoid the imposition of a constructive dividend.  We disagree.

In Creske, Wausau Tile, Inc. (Wausau), paid bonuses to its
shareholders and employees in the form of promissory notes, which
were credited to note payable accounts.  The bonuses were
properly declared as income in each year and Federal and State
income taxes were withheld.  In order to obtain industry
discounts, Wausau expressly authorized and approved payment of
the costs of building a new home for one of its officers and
directors, William J. Creske, as a way of repaying the promissory
notes payable to him.  Thus, Wausau paid the expenses incurred
during 1983 and 1984 that related to the purchase of the lot of
land and various subsequent construction costs of Mr. Creske's
personal residence.  Over the course of 2 years, Wausau issued

approximately 65 checks for the construction of the home totaling $123,909; only $65,137 was applied to reduce Mr. Creske's note payable account. Respondent argued that the costs not deducted from Mr. Creske's note payable account constituted constructive dividends.

The issue in Creske turned on whether the failure to apply the uncredited amounts to Mr. Creske's note payable account was intentional or whether it was attributable to a mistake by Wausau's bookkeeping department. We found that Mr. Creske intended to pay for all his construction costs as they were incurred and that Mr. Creske had the financial means to pay the construction costs. We held that payment of the expenses incurred in the construction of Mr. Creske's personal residence did not result in constructive dividends to Mr. Creske; rather, the amounts incurred represented repayment of indebtedness and were supposed to be posted to his note payable account. Creske is distinguishable from this case.

Mr. and Mrs. Dobbe have failed to prove that Holland America intended to treat its payment of the expenses as repayments of Mr. and Mrs. Dobbe's shareholder loans. Holland America disguised the various expenses as "advertising" (landscaping), "supplies" (groceries), and "small tools" (solarium) deductions. Petitioners' accountant testified that Holland America regularly paid various personal expenses, charged the expenses against the

rent, interest, and principal the corporation owed them, and deducted the expenses from the Dobbes' shareholder loan account. If this had been done with the disputed expenses, petitioners would have had a stronger argument. The record before us supports our finding that Holland America attempted to deduct the personal expenses of its shareholders by disguising them as business expenses on its Federal income tax return. Since petitioners did not classify Holland America's payments of Mr. and Mrs. Dobbe's personal expenses as loan repayments, we will not do it for them under the circumstances involved here.

We have carefully considered all remaining arguments made by the parties for contrary holdings and, to the extent not discussed, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155.</u>