T.C. Memo. 1998-93


UNITED STATES TAX COURT


ROGER L. AND GERALDINE WILLIAMS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24222-96.                    Filed March 3, 1998.


Roger L. and Geraldine Williams, pro se.

<u>Gregory M. Hahn</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 1993, the taxable year in
(continued...)

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1993 in the amount of $2,958.

After concessions by respondent, the issues for decision, which essentially involve substantiation, are as follows:

(1) Whether petitioners are entitled to a deduction for automobile expense in excess of the amount allowed by respondent;

(2) whether petitioners are entitled to a deduction for insurance expense in excess of the amount allowed by respondent;

(3) whether petitioners are entitled to a deduction for legal expense in the amount of $1,300;

(4) whether petitioners are entitled to a deduction for the lease of an automobile in the amount of $1,525;

(5) whether petitioners are entitled to a deduction for rent on business property in excess of the amount allowed by respondent;

(6) whether petitioners are entitled to a deduction for repairs and maintenance in the amount of $2,338; and

(7) whether petitioners are entitled to a deduction for supplies in excess of the amount allowed by respondent.

The amount of petitioners' liability for self-employment tax and the amount of the deduction under section 164(f) to which petitioners are entitled are mechanical matters, the resolution

[1](...continued)
issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

of which will depend upon our disposition of the issues enumerated above.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioners resided in Seattle, Washington, at the time that their petition was filed with the Court.

Petitioner Roger L. Williams (petitioner) began operating a shoeshine business in 1990 at the Holiday Inn in Renton, Washington. Some time thereafter, but prior to the year in issue, petitioner moved his shoeshine business to the Red Lion Hotel (Red Lion) in SeaTac, Washington.

The shoeshine stand at the Red Lion had two chairs and was owned and maintained by the Red Lion. Petitioner paid the Red Lion $43 per week for use of the stand. Petitioner paid the rental in cash, and the Red Lion issued a receipt for the amount paid. Petitioner gave the receipts to his wife, who kept the records of his expenses.

On or about May 15, 1993, petitioner began operating a second shoeshine stand at the South Satellite of the Seattle-Tacoma International Airport (SeaTac Airport). SeaTac Airport is located no more than a half-mile from the Red Lion.

Petitioner operated his shoeshine business at SeaTac Airport pursuant to a month-to-month lease (Port lease) with the Port of Seattle (Port). In contrast to Red Lion, the Port did not provide petitioner with a shoeshine stand.

Petitioner's lease with the Port, which was in effect from May 15, 1993 through the end of that year, required him to pay rent of $300 per month. In addition, petitioner paid a $900 security deposit to the Port upon commencement of the lease. The lease provided that petitioner's security deposit would be returned to him upon termination of the lease, if all of the terms and conditions thereof were honored.

The Port lease required petitioner to obtain liability insurance in the minimum amount of $1 million. Petitioner obtained the insurance from State Farm Fire and Casualty Co. (State Farm).

Petitioner determined his own work schedule. Typically, petitioner worked from 7 a.m. to 4 p.m. on weekdays. In addition, petitioner often worked a few hours on Saturdays. Petitioner allocated his time between the Red Lion and SeaTac Airport according to the amount of business at each location. On occasion, petitioner was called upon by the Red Lion to perform shoeshine services for special guests during his leisure time.

SeaTac is located south of petitioner's home in Seattle. In 1993, petitioner used an automobile to commute to and from work and to purchase supplies. Petitioner occasionally used the automobile for transportation between the Red Lion and SeaTac Airport. Generally, however, petitioner walked from one shoeshine stand to the other.

Petitioner furnished his own supplies at both the Red Lion and SeaTac Airport. Petitioner obtained most of his supplies from MacPherson Leather Co. (MacPherson Leather), which was located in Seattle. On occasion, petitioner purchased supplies from stores such as K-Mart and Safeway. Petitioner did not maintain complete records of all of the supplies that he purchased. Petitioner did, however, maintain some records of the supplies that he purchased from MacPherson Leather.

Petitioner paid business expenses both in cash and by check. Petitioner's rent under the Port lease was paid by check "so we have a record of what we pay to the Port." Of the eight receipts for supplies from MacPherson Leather that are included in the trial record, three definitively disclose payment by check (in the amounts of $20.90, $19.36, and $28.50).

During 1993, an individual by the name of Willie Hughes (Mr. Hughes) performed various services for petitioner. These services included accounting and tax preparation services. Mr. Hughes also assisted petitioner in obtaining the Port lease. Petitioner paid Mr. Hughes for these services.

On his Schedule C for 1993, petitioner claimed a net loss in the amount of $5,111. In this regard, petitioner reported gross receipts in the amount of $11,700 and claimed expenses in the amount of $16,811.

In the notice of deficiency, respondent disallowed the following expenses claimed by petitioner on his Schedule C:

|                  | Return  | Allowed | Disallowed |
|------------------|---------|---------|------------|
| Car & truck      | $1,972  | $98     | $1,874     |
| Insurance        | 270     | 150     | 120        |
| Legal services   | 1,300   | --      | 1,300      |
| Rent, vehicles   | 1,525   | --      | 1,525      |
| Rent, business   | 5,036   | 1,330   | 3,706      |
| Repairs & maint. | 2,338   | --      | 2,338      |
| Supplies         | 2,250   | 219     | 2,031      |
| Taxes & licenses | 1,350   | 1,350   | --         |
| Other            | 750     | 750     | --         |
| Error on return  | 20      | --      | 20         |
| Total            | 16,811  | 3,897   | 12,914     |

Prior to trial, petitioner provided documentation for some of the disallowed deductions. Based on such documentation, respondent allowed additional deductions for (1) business rent in the amount of $1,298 and (2) supplies in the amount of $9. Accordingly, the following amounts remain in issue:

|                  | Return  | Allowed | Disallowed |
|------------------|---------|---------|------------|
| Car & truck      | $1,972  | $98     | $1,874     |
| Insurance        | 270     | 150     | 120        |
| Legal services   | 1,300   | --      | 1,300      |
| Rent, vehicles   | 1,525   | --      | 1,525      |
| Rent, business   | 5,036   | 2,628   | 2,408      |
| Repairs & maint. | 2,338   | --      | 2,338      |
| Supplies         | 2,250   | 228     | 2,022      |
| Taxes & licenses | 1,350   | 1,350   | --         |
| Other            | 750     | 750     | --         |
| Error on return  | 20      | --      | 20         |
| Total            | 16,811  | 5,204   | 11,607     |

OPINION

General Legal Principles

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations

are erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); see also sec. 6001 and sec. 1.6001-1(a), (e), Income Tax Regs., (requiring taxpayers to maintain sufficient records to permit verification of deductible expenses).

1. Automobile-related Expenses

Petitioners claimed deductions for "Car & Truck" in the amount of $1,972 and for "Rent, vehicles" in the amount of $1,525. Respondent allowed $98 of the deduction claimed for "Car & Truck" and disallowed the balance of that deduction. Respondent disallowed the deduction claimed for "Rent, vehicles" in its entirety.

Petitioner contends that he used an automobile to commute to and from work, to travel between the Red Lion and SeaTac Airport, and to purchase supplies. In this regard, petitioner contends that the deduction claimed for "Car & Truck" represents the cost of operating the automobile, and that the deduction claimed for "Rent, vehicles" represents the cost of leasing the automobile.

Section 162(a) authorizes deductions for ordinary and necessary expenses paid during the taxable year in carrying on a trade or business.  However, section 262 generally precludes deductions for personal expenses.  Thus, expenses incurred by a taxpayer in commuting between his or her home and place of business are personal and nondeductible.  Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.[2]

Moreover, section 274(d)(4) provides that no deduction is allowable with respect to listed property, as defined in section 280F(d)(4), unless the deduction is substantiated in accordance with the strict substantiation requirements of section 274(d) and the regulations promulgated thereunder.  Included in the definition of listed property in section 280F(d)(4) is any passenger automobile.  Sec. 280F(d)(4)(A)(i).

In order to substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to show: (A) The amount of the expense or use, (B) the time and place of the expenditure or use of the listed property, and (C) the business purpose for the expenditure or use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

---

[2]  In contrast, expenses incurred in traveling between two places of business are deductible. Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960).

In order to substantiate a deduction by means of adequate records, a taxpayer must maintain a diary, a log, or a similar record, and documentary evidence that, in combination, are sufficient to establish each element of each expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). To be adequate, a record must generally be written. Each element of an expenditure or use that must be substantiated should be recorded at or near the time of that expenditure or use. Sec. 1.274-5T(c)(2)(ii)(C)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46019 (Nov. 6, 1985).

According to section 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985):

> the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence. * * *

Thus, under section 274(d), no deduction may be allowed for expenses incurred for use of a passenger automobile on the basis of any approximation or the unsupported testimony of the taxpayer. E.g., Golden v. Commissioner, T.C. Memo. 1993-602.

At trial, petitioner testified that he used an automobile principally to commute to and from work. However, as we have already observed, commuting expenses are personal and nondeductible. Sec. 262; Commissioner v. Flowers, 326 U.S. at 473-474; secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.

In contrast to commuting, automobile expenses incurred by petitioner in obtaining supplies may be deductible. However, those expenses would not be deductible if petitioner merely obtained supplies while commuting to work. See Mazzotta v. Commissioner, 57 T.C. 427 (1971), affd. per curiam 465 F.2d 1399 (2d Cir. 1972), affd. without published opinion 467 F.2d 943 (2d Cir. 1972). Assuming that petitioner obtained supplies independent of his morning or afternoon commute,[3] then, in order to be entitled to any deduction, petitioner would have to meet the strict substantiation requirements of section 274(d).

At trial, petitioners did not introduce any records pertaining to automobile-related expenses, much less the type of records necessary to substantiate the claimed deductions. See sec. 274(d). Rather, petitioners presented only unsupported testimony as evidence of the claimed deductions. Further, petitioners did not introduce documentation demonstrating that an automobile was leased or that payments were made on such a lease. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). This deficiency in the record, for which petitioners must accept responsibility, precludes an allowance for any automobile-related expense in excess of the amount allowed by respondent.

---

[3] The $98 of the "Car & Truck" deduction allowed by respondent represents 350 business miles at the standard rate of $0.28 per mile for trips made to purchase supplies.

In view of the foregoing, respondent's determinations regarding the deductions claimed for "Car & Truck" and "Rent, vehicles" are sustained.

2. <u>Insurance</u>

Petitioners claimed a deduction for "Insurance" in the amount of $270. Petitioners contend that this deduction represents two premiums paid to State Farm for policies required by the Port lease. In this regard, petitioners claim that a premium of $150 was paid for a $1 million liability policy and another premium of $120 was paid for a $1 million bond. Respondent allowed a deduction for the $150 premium paid for the liability policy but disallowed the balance of the deduction for lack of substantiation.

In deciding whether a taxpayer has satisfied his or her burden of substantiating a deduction, we are not required to accept the taxpayer's self-serving, undocumented testimony. <u>Wood v. Commissioner</u>, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 219-220 (1992); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Hradesky v. Commissioner</u>, 65 T.C. at 90.

Petitioners presented no evidence at trial that the Port lease required a $1 million bond in addition to liability coverage in the amount of $1 million. The copy of the lease introduced into evidence contains no requirement for such a bond. Moreover, the lease recites that it is a complete contract of

agreement between the parties.  Thus, if petitioner were required to post a $1,000,000 bond by the Port lease, such a requirement would have been included in the lease.

In addition, petitioners claimed at trial that the $1 million bond was obtained from State Farm.  Inasmuch as petitioners were able to produce a copy of the liability policy obtained from State Farm, we fail to understand why petitioners were unable to produce a copy of the alleged bond, if it existed, from State Farm.  See Wichita Terminal Elevator Co. v. Commissioner, supra.  Finally, petitioners failed to produce documentary evidence of payment for the premium for the alleged bond.

In view of the foregoing, respondent's determination regarding the deduction for "Insurance" is sustained.

3.  Legal Services

Petitioners claimed a deduction for "Legal Services" in the amount of $1,300.  Petitioners contend that this deduction represents amounts paid in cash to Mr. Hughes for his services. Respondent disallowed the deduction in its entirety for lack of substantiation.

As a general rule, in the case of expenses that are not subject to the substantiation requirements of section 274(d), if the record provides sufficient evidence that a taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he

or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). In making such an estimate, however, the Court may bear heavily against the taxpayer, whose inexactitude is of his or her own making. <u>Id.</u>

Petitioners claim that in 1993 Mr. Hughes provided petitioner with a business proposal that petitioner used to obtain the Port lease. Petitioners also claim that Mr. Hughes provided them with various accounting and certification services. In return for these services, petitioners claim that they paid Mr. Hughes $1,300 in cash.

At trial, petitioners were unable to recall when they paid Mr. Hughes or whether they paid him in installments. Moreover, petitioners introduced no copy of any invoice(s) from Mr. Hughes for the services that he performed in 1993. Petitioners testified that they had "a fire in our home in the last 2 or 3 years that did a substantial amount of damage in our basement, so some of the stuff got lost."[4]

Mr. Hughes appeared at trial and corroborated petitioners' testimony. However, Mr. Hughes was unable to produce any records detailing the services that he provided. Mr. Hughes testified

---

[4] Petitioners did not present any evidence, such as an insurance claim or a fire department report, to substantiate this allegation.

that although such records existed at one time, they were lost when he moved his office.

Based on our opportunity to observe Mr. Hughes at trial, we are unable to accept his testimony uncritically. Nevertheless, and despite what appears to us to be a convenient lack of records, we are satisfied that petitioners incurred some deductible expense for Mr. Hughes' services in 1993. Thus, bearing heavily against petitioners, whose inexactitude is of their own making, we hold that petitioners are entitled to deduct $250 in "Legal Services" in 1993. Cohan v. Commissioner, supra at 543-544. Accordingly, respondent's determination on this issue is partially sustained.

4. Rent

Petitioner claimed a deduction for "Rent, business" in the amount of $5,036. Petitioners contend that this amount represents the sum of (1) rent paid to SeaTac Airport under the Port lease, and (2) amounts paid to Red Lion for the use of its shoeshine stand.

In the notice of deficiency, respondent allowed $1,330 of the claimed deduction and disallowed the balance for lack of substantiation. However, at trial, respondent conceded that petitioners are entitled to deduct an additional $1,298. The sum of these two amounts, $2,628, represents the following: (1) Rent for 6 months in the monthly amount of $300 paid to the Port (i.e., $1,800); (2) rent in the amount of $226 paid to the Port

for the month of August 1993;[5] and (3) rent for 14 weeks in the weekly amount of $43 paid to Red Lion (i.e., $612).[6]

Petitioners presented limited records to substantiate the claimed deduction. Nevertheless, insofar as the Port lease is concerned, the record establishes that petitioners are entitled to deduct rent for the 7-½ month period that the lease was in effect during 1993; i.e., on or about May 15 through December 31, 1993. In contrast, respondent has allowed a rent deduction for the period June 1 through December 31, 1993. Accordingly, we hold that petitioners are entitled to deduct an additional $150 for the first one-half month of the lease term.

Petitioners contend that the $900 security deposit paid to the Port upon execution of the lease in 1993 is deductible in that year. We disagree. A security deposit is not deductible, if at all, until the year actually forfeited. Accordingly, the $900 security deposit is not deductible in 1993 because it was not forfeited in that year, but remained refundable upon termination of the lease.

Insofar as the Red Lion is concerned, petitioners presented only 14 weekly receipts. However, petitioners presented at least one receipt for each month of 1993, except November and December.

---

[5] Respondent accepted petitioner's statement that the Port rebated a portion of petitioner's rent for the month of August 1993.

[6] Respondent allowed the latter amount based on the 14 weekly rent receipts from the Red Lion that petitioners produced.

By way of explanation, petitioner testified that some of his records were destroyed in a fire.[7]  Although no explanation was given why some rent receipts escaped the alleged fire while others did not, we ascribe some weight to petitioner's testimony that he worked at Red Lion throughout the year.  Based on the record as a whole, we hold that petitioners are entitled to deduct rent paid to the Red Lion in the total amount of $1,720 (i.e., 40 weeks times $43 per week).  Cohan v. Commissioner, supra.

5.  Repairs and Maintenance

Petitioners claimed a deduction for "Repairs & Maintenance" in the amount of $2,338.  In the notice of deficiency, respondent disallowed the deduction in its entirety for lack of substantiation.

According to petitioners, the deduction in question represents the cost of repairing an existing shoeshine stand and then building a new shoeshine stand.  In this regard, petitioner testified that repairs to his shoeshine stand were necessitated by the Port lease; however, according to petitioner, the Port was not satisfied with the aesthetic appearance of the stand, "So to bring me up to standards, they got me together with an architect to build one out of Formica and stuff, basically."

---

[7]  See supra note 4.

At trial, petitioners introduced three checks payable to "cash" totaling $2,285 to support the claimed deduction.[8]  Two checks are dated February 1993 and one check is dated March 1993. Petitioners contend that these checks are sufficient to substantiate the claimed deduction.  We disagree.

A check made payable to "cash" does not, in and of itself, prove payment of a deductible expense.  And, other than their own self-serving testimony, petitioners offered no evidence in support of the claimed deduction.  See Wood v. Commissioner, 338 F.2d at 605; Niedringhaus v. Commissioner, 99 T.C. at 219-220; Tokarski v. Commissioner, 87 T.C. at 77; Hradesky v. Commissioner, 65 T.C. at 90.

Thus, petitioners did not present a single invoice for either materials or services related to the alleged repair of the existing shoeshine stand or the construction of the new stand. Although petitioners claim that their records were destroyed by fire,[9] petitioners failed to explain why the alleged suppliers or service providers (such as the "architect") were unable to testify on petitioners' behalf, or why the records of the alleged suppliers or service providers were unavailable.

---

[8]  According to petitioners, the $53 difference between the amount deducted ($2,338) and the sum of the three checks ($2,285) represents the cost of transporting the new shoeshine stand to SeaTac Airport.

[9]  See supra note 4.

Moreover, the checks that petitioners introduced at trial were dated in February and March, well before the Port lease was executed. We are not convinced that petitioners would have incurred expenses of $2,285 before entering into the Port lease.

In addition, the record demonstrates that petitioners wrote checks for business expenses unrelated to the deduction for "Repairs and Maintenance", particularly when they wanted to have a record of what they had paid. That being the case, petitioners did not adequately explain why they dealt exclusively in cash regarding the deduction in issue, especially in view of its magnitude.

Finally, the Port lease is silent regarding the aesthetic "requirements" for a shoeshine stand or the Port's "right" to impose its aesthetic sensibilities on petitioners. In any event, petitioners failed to call any representative of the Port to testify regarding the need for the construction of a new shoeshine stand or the repair of any existing stand.

In view of the foregoing, we hold that petitioners failed to carry their burden of proof. While under other circumstances we might be inclined to estimate a reasonable allowance, see Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), here, however, there is no basis upon which an estimate may be made, see Vanicek v. Commissioner, 85 T.C. 731, 743 (1985), any allowance would amount to unguided largess, see Williams v. United States, 245 F.2d 559,

560 (5th Cir. 1957).[10]  Accordingly, we sustain respondent's determination on this issue.

6.  Supplies

Petitioners claimed a deduction for "Supplies" in the amount of $2,250.  In the notice of deficiency, respondent allowed $219 of the claimed deduction and disallowed the balance for lack of substantiation.  However, at trial, respondent conceded that petitioners are entitled to deduct an additional $9.

At trial, petitioners presented limited records related to the claimed deduction.  Petitioners did produce several invoices from MacPherson Leather bearing dates throughout the year, as well as a canceled check, that together total $228, which respondent allowed.  Petitioners allege that additional records substantiating the claimed deduction were destroyed in a fire.[11]  Again, however, no explanation was provided why some of these records escaped destruction while others did not.  Nevertheless, we are satisfied that petitioners did in fact incur additional expense for supplies.  Based on the record as a whole, we hold that petitioners are entitled to deduct $250 for supplies in addition to the amount allowed by respondent.  Cohan v. Commissioner, supra.

_____

[10]  In addition, any amount spent to acquire a new stand might be a capital expenditure and for that reason not a current expense.  Secs. 263(a), 167, 168, 179(c).

[11]  See supra note 4.

7. <u>Conclusion</u>

   To reflect our disposition of the disputed issues, as well as respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
