T.C. Summary Opinion 2014-108

UNITED STATES TAX COURT

TORY M. WATSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26032-11S.                     Filed December 8, 2014.

<u>E. Rhett Buck, Jr.</u>, for petitioner.

<u>Portia Neomi Rose</u>, for respondent.

SUMMARY OPINION

MORRISON, <u>Judge</u>:  This case was heard pursuant to section 7463 of the

Internal Revenue Code in effect when the petition was filed.  Pursuant to section

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.[1]

The respondent (referred to here as the "IRS") issued a notice of deficiency to the petitioner, Tory M. Watson (referred to here as "Watson"), for the 2005 and 2006 tax years determining: (1) income-tax deficiencies of $2,282[2] for 2005 and $26,257 for 2006; (2) additions to tax for 2006 of $5,633 under section 6651(a)(1) and $6,259 under section 6651(a)(2); and (3) an accuracy-related penalty for 2006 of $5,251 under section 6662(a).

After trial the parties settled many of the issues. The remaining issues to be resolved involve the tax treatment of certain business expenses of LLCs Watson owned. Specifically, the remaining issues are:

(1)    The amount of the rental-expense deduction for Skyline Motion Pictures, LLC, for 2005. We hold that the amount is $16,605.

(2)    The amount of the contract-labor-expense deduction for Skyline Motion Pictures, LLC, for 2005. We hold that the amount is $75,153.

---

[1]All subsequent section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]All dollar amounts are rounded to the nearest dollar.

(3)     The amount of the contract-labor-expense deduction for Skyline Movement, LLC, for 2006.  We hold that the amount is $14,778.

(4)     The amount of the contract-labor-expense deduction for Liberation Financial, LLC, for 2006.  We hold that the amount is $8,900.

## Background

The stipulated facts and the supplemental stipulation of facts are incorporated by this reference.  Watson resided in Texas at the time he filed the petition.

From 2002 through 2006 Watson was an employee in the mortgage industry.  During 2005 Watson was employed by DSG Mortgage, LLC, and First Capital Mortgage Corp. as a loan originator.  During 2006 Watson was employed by First Capital Mortgage Corp. as a loan originator.

Watson prepared his own federal-income-tax returns for 2005 and 2006.  He filed these returns late.  Watson's 2005 return included Schedules C, "Profit or Loss From Business," for two LLCs that he owned and operated:  Britt and Skyline Motion Pictures.  Through Britt, Watson engaged in the business of making and selling clothing.  Through Skyline Motion Pictures, Watson engaged in the business of producing films and other entertainment.

During 2006 Watson abandoned Skyline Motion Pictures' business of producing films and other entertainment. He changed the name of the LLC to Skyline Movement. Through Skyline Movement, Watson engaged in website design and other consulting services. On his 2006 return he included a Schedule C for Skyline Movement. He also included a Schedule C for Liberation Financial, LLC, another LLC that he owned and operated. Through Liberation Financial, Watson advised mortgage companies on improving their overall performance and the performance of their loan officers. All three LLCs (Skyline Motion Pictures/Skyline Movement, Britt, and Liberation Financial) were disregarded entities for federal tax purposes. Therefore, Watson is treated for federal tax purposes as if he operated the LLCs as sole proprietorships. The IRS does not challenge the existence of the businesses the LLCs conducted or that the businesses were operated for profit.

On the Schedule C for Skyline Motion Pictures for 2005 Watson claimed business-expense deductions of $291,558. On the Schedule C for Britt for 2005 Watson claimed business-expense deductions of $10,839. Watson reported that neither business had gross income for 2005. On the Schedule C for Skyline Movement for 2006 Watson claimed business-expense deductions of $152,940. On the Schedule C for Liberation Financial for 2006 Watson claimed business-

expense deductions of $208,426. Watson reported gross income for both Skyline Movement and Liberation Financial for 2006.

On August 9, 2011, the IRS mailed a notice of deficiency to Watson for both 2005 and 2006. In the notice of deficiency, the IRS disallowed:

- all business-expense deductions that Watson claimed on the Schedule C for Skyline Motion Pictures for 2005,

- all business-expense deductions that Watson claimed on the Schedule C for Britt for 2005,

- $70,016 of the business-expense deductions that Watson claimed on the Schedule C for Skyline Movement for 2006, and

- $97,973 of the business-expense deductions that Watson claimed on the Schedule C for Liberation Financial for 2006.

The IRS also determined that for 2005 Watson had earned $67 in interest and received $1,376 attributable to a refund from the State of Illinois Revenue Department. The IRS also made computational adjustments for both years to Watson's self-employment taxes, adjusted gross income, itemized deductions, and net operating losses. The IRS determined: (1) income-tax deficiencies of $2,282 for 2005 and $26,257 for 2006; (2) additions to tax for 2006 of $5,633 under

section 6651(a)(1) and $6,259 under section 6651(a)(2); and (3) an accuracy-related penalty for 2006 of $5,251 under section 6662(a).

The case was tried in Houston, Texas. After trial the parties reached a partial settlement. The parties agreed that: (1) Watson's income for 2005 is increased by $67 for interest and $1,376 for the refund from the State of Illinois Revenue Department; (2) any adjustments to Watson's self-employment taxes, adjusted gross income, itemized deductions, and net operating losses for 2005 and 2006 are computational; and (3) for 2006 Watson is liable for additions to tax under section 6651(a)(1) and (2) and a penalty under section 6662(a) for any underpayment that is determined. As for the Schedule-C adjustments, it appears to us that the settlement agreement resolved all Schedule-C adjustments except for the following four categories:

- a rental-expense deduction for Skyline Motion Pictures for 2005,

- a contract-labor-expense deduction for Skyline Motion Pictures for 2005,

- a contract-labor-expense deduction for Skyline Movement for 2006, and

- a contract-labor-expense deduction for Liberation Financial for 2006.

The following tables summarize: (1) the categories of Schedule-C expenses that Watson reported; (2) the amounts Watson claimed on his returns for each category; (3) the amounts allowed in the notice of deficiency for each category; and (4) the parties' positions regarding the deductible amounts for each category, as reflected in the pleadings, the concessions made at trial, the settlement agreement, and the briefs.

| Skyline Motion Pictures (2005) | | | |
|---|---|---|---|
| Item | Amount per return | Amount allowed in notice of deficiency | Parties' positions |
| Advertising | $20,734 | -0- | $20,565 (as settled) |
| Business use of home | 16,877 | -0- | -0- (as settled) |
| Car and truck expenses | 8,489 | -0- | 2,430 (as settled) |
| Contract labor | 85,843 | -0- | [1]78,861 (Watson) <br> -0- (IRS) |
| Depreciation | 8,621 | -0- | 4,625 (as settled) |
| Legal & professional services | 15,822 | -0- | 8,480 (as settled) |
| Office expense | 2,901 | -0- | 11,767 (as settled) |
| Rent or lease of "[o]ther business property" | 22,769 | -0- | 23,055 (Watson) <br> -0- (IRS) |
| Supplies | 15,392 | -0- | [2]-0- |
| Travel | 26,491 | -0- | [2]-0- |
| Meals and entertainment | 12,287 | -0- | [2]-0- |
| Utilities | 10,035 | -0- | 794 (as settled) |

| | | | |
|---|---|---|---|
| "Other expenses" | 45,297 | -0- | 15,431 (as settled) |
| Total | 291,558 | -0- | 64,092 (settled as deductible)<br>plus<br>101,916 (still sought by Watson) |

[1]This amount is explained infra Discussion part 2.a.
[2]Watson did not argue for any deduction at trial or on brief.  These are deemed conceded. See, e.g., Hedrick v. Commissioner, 63 T.C. 395, 396-397 (1974).

| Britt (2005) | | | |
|---|---|---|---|
| Item | Amount per return | Amount allowed in notice of deficiency | Parties' positions |
| Supplies | $421 | -0- | $5,420 (as settled) |
| "Other expenses" | 10,418 | -0- | -0- (as settled) |
| Total | 10,839 | -0- | 5,420 (settled as deductible) |

| Skyline Movement (2006) | | | |
|---|---|---|---|
| Item | Amount per return | Amount allowed in notice of deficiency | Parties' positions |
| Advertising | $1,643 | $1,643 | [1]$1,643 |
| Car and truck expenses | 33,225 | 33,225 | [1]33,225 |
| Contract labor | 26,870 | -0- | [2]$14,778 (Watson)<br>-0- (IRS) |
| Depreciation | 13,056 | 13,056 | [1]13,056 |
| Legal & professional services | 4,350 | 4,350 | [1]4,350 |
| Rent or lease of "[o]ther business property" | 2,100 | 2,100 | [1]2,100 |

| | | | |
|---|---|---|---|
| Supplies | 9,235 | 9,235 | [1]9,235 |
| Travel | 6,912 | 5,169 | 1,237 (as settled) |
| Meals and entertainment | 26,135 | 1,565 | 486 (as settled) |
| Utilities | 6,289 | 6,289 | [1]6,289 |
| "Other expenses" | 23,125 | 6,292 | 8,617 (as settled) |
| Total | 152,940 | 82,924 | [3]80,238 plus 14,778 (still sought by Watson) |

[1]Neither party sought an amount different than the amount allowed in the notice of deficiency.

[2]This amount is explained infra Discussion part 2.b.
[3]This consists of: (1) amounts agreed to in settlement and (2) amounts determined in notice of deficiency in categories for which neither party sought an amount different than the amount allowed in the notice of deficiency.

| Liberation Financial (2006) | | | |
|---|---|---|---|
| Item | Amount per return | Amount allowed in notice of deficiency | Parties' positions |
| Advertising | $27,125 | $27,125 | [1]$27,125 |
| Contract labor | 45,548 | -0- | 260,582 (Watson) -0- (IRS) |
| Legal & professional services | 3,875 | 3,875 | [1]3,875 |
| Office expenses | 36,030 | 36,030 | [1]36,030 |
| Supplies | 13,516 | 13,516 | [1]13,516 |
| Taxes and licenses | 1,350 | 1,350 | [1]1,350 |
| Travel | 4,291 | 552 | 2,480 (as settled) |
| Meals and entertainment | 38,513 | 3,779 | 2,672 (as settled) |
| Utilities | 18,393 | 18,393 | [1]18,393 |

| "Other expenses" | 19,785 | 5,833 | 7,111 (as settled) |
|---|---|---|---|
| Total | 208,426 | 110,453 | [3]112,552 plus 60,582 (still sought by Watson) |

[1]Neither party sought an amount different than the amount allowed in the notice of deficiency.

[2]This amount is explained infra Discussion part 2.c.

[3]This consists of:  (1) amounts agreed to in settlement and (2) amounts determined in notice of deficiency in categories for which neither party sought an amount different than the amount allowed in the notice of deficiency.

## Discussion

Generally, the taxpayer bears the burden of proving, by a preponderance of the evidence, that the determinations in the notice of deficiency are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a) imposes the burden of proof on the IRS with respect to fact issues for which the taxpayer:  (1) complied with the substantiation requirements of the Internal Revenue Code; (2) maintained all records required under the Internal Revenue Code; (3) cooperated with reasonable requests by the IRS for witnesses, information, documents, meetings, and interviews; and (4) introduced credible evidence.  Credible evidence is the quality of evidence which the Court would find sufficient upon which to base a decision on the issue in the taxpayer's favor, absent any contrary evidence.  See, e.g., Higbee v. Commissioner, 116 T.C. 438, 442 (2001).  Watson argues that he has satisfied the conditions required to impose

the burden of proof on the IRS. We need not decide whether section 7491(a)

imposes the burden of proof on the IRS. This is because our findings are

supported by the preponderance of the evidence. See Knudsen v. Commissioner,

131 T.C. 185, 189 (2008).

Section 162(a) authorizes a deduction for ordinary and necessary expenses

that were paid or incurred during the taxable year in carrying on the taxpayer's

trade or business, including rental payments, section 1.162-1(a), Income Tax

Regs., and payments for services, section 1.162-7(a), Income Tax Regs. An

expense is "ordinary" if either it is customary or usual within the particular trade,

business, or industry or it relates to a transaction "of common or frequent

occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488,

495 (1940). An expense is "necessary" if it is both appropriate and helpful to the

taxpayer's trade or business, see, e.g., Welch v. Helvering, 290 U.S. at 113, and it

is directly connected with or pertains directly to the taxpayer's trade or business,

sec. 1.162-1(a), Income Tax Regs. Being an employee is considered a trade or

business, and thus the ordinary and necessary expenses of employment are

deductible under section 162(a), provided, however, that the employee cannot seek

reimbursement of the expenses from the employer. See, e.g., Benson v.

Commissioner, T.C. Memo. 2007-113, 93 T.C.M. (CCH) 1199, 1201 (2007)

(citing Podems v. Commissioner, 24 T.C. 21, 23 (1955)). Personal, family, and living expenses are generally not deductible. Sec. 262(a).

If the taxpayer establishes that the taxpayer paid or incurred a deductible expense but does not establish the amount of the expense, then the court may estimate the amount of the allowable deduction if there is sufficient evidence in the record to provide a rational basis for the estimate. Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). If the evidence in the record does not provide a rational basis for the estimate, the claimed deduction must be disallowed. Vanicek v. Commissioner, 85 T.C. 731 at 742-743.

1.    Rental-expense deduction for 2005

Watson claimed a rental-expense deduction of $22,769 on the Schedule C for Skyline Motion Pictures for 2005. In the notice of deficiency, the IRS disallowed that deduction. At trial and on brief Watson asserted that he is entitled to a rental-expense deduction of $23,055 for Skyline Motion Pictures for 2005 consisting of:

- $4,500 that Watson allegedly paid to Gerry Licea to rent a unit in an unidentified building as an office for Skyline Motion Pictures for February, March, and April 2005,

- $15,605 that Watson allegedly paid to Sarah Bajwa to rent Unit 711 as an office for Skyline Motion Pictures for June through December 2005, and

- $2,950 that Watson allegedly paid to lease a house in Los Angeles for one week for business meetings for Skyline Motion Pictures.

The IRS disputes the deductibility of any rental expense for Skyline Motion Pictures for 2005.

As discussed more fully below, we hold that Watson is entitled to a total rental-expense deduction of $16,605 for Skyline Motion Pictures for 2005, which consists of:

- Zero of the $4,500 allegedly paid to Gerry Licea,

- $13,655 of the $15,605 allegedly paid as rent for Unit 711, and

- $2,950 of the $2,950 paid to lease the house in Los Angeles.

a.  Rental-expense deductions for rental of an office from Gerry Licea

Watson testified that he paid $4,500 to Gerry Licea to lease "a unit in a different building" (i.e., different from 125 East 13th Street, Chicago, Illinois, which was the office of Skyline Motion Pictures beginning in June 2005) at the rate of $1,500 per month for February, March, and April 2005. The documentary evidence confirms that Watson made one $1,500 payment to Gerry Licea.

However, Watson's testimony about the alleged office was vague and tentative. He did not tell us the address of the "different building". He supplied no other details about the office or what he used it for. No documents in the record corroborate Watson's testimony. His vague, uncorroborated testimony was too weak to be credible on this point. Consequently, Watson is not entitled to any deduction for rental payments to Gerry Licea for an office for Skyline Motion Pictures for 2005.

b.    Rental-expense deduction for rental of Unit 711

Unit 711 was a condominium loft with a kitchen and a bedroom in a residential building at 125 East 13th Street, Chicago, Illinois. During 2005, Watson owned and lived in Unit 1406, also at 125 East 13th Street, Chicago, Illinois.

Watson explained in detail how he used Unit 711: He kept audiovisual equipment in the unit, he wrote movie scripts in the unit, and he met there with Skyline Motion Pictures' contractors. Watson's testimony was credible. We hold that the rent payments for Unit 711 were an ordinary and necessary business expense.

To prove the amount of rent he paid for Unit 711, Watson provided a copy of the signed lease agreement for Unit 711. The agreement required Watson to

pay a monthly rent of $1,950 per month and $50 per month for a parking space. The term of the lease was from June 4, 2005, to June 4, 2006. Watson also provided copies of these checks and cleared-check images written on Skyline Motion Picture's bank account, written to Sarah Bajwa:

- a check dated May 26, 2005, for $1,950 for "deposit" for "Unit 1406",

- a check dated May 26, 2005, for $1,755 for "June 2005 rent",

- a check dated July 18, 2005, for $1,950 for "July Rent #711",

- a check dated August 1, 2005, for $1,950 for "August Rent #711",

- a check dated September 2, 2005, for $2,000 for "Sept '05 Rent and Parking", and

- a check dated October 4, 2005, for $2,000 for "Oct Rent - Apt #711".

Watson testified that the first check, which was noted as "deposit" for "Unit 1406", actually related to Unit 711, not Unit 1406. We take this to be true. However, the check appears to be a payment of a security deposit, not rent. Security deposits are not deductible, if at all, until the year actually forfeited. Williams v. Commissioner, T.C. Memo. 1998-93, 75 T.C.M. (CCH) 1933, 1938 (1998).

On the basis of Watson's testimony, copies of checks and cleared-check images, and the signed lease agreement, we find that Watson paid $1,755 for rent for June 2005, $1,950 for rent for July 2005, $1,950 for rent for August 2005, $2,000 for rent for September 2005, and $2,000 for rent for October 2005.

Watson testified that he paid rent for November and December 2005, but he could not find checks or other documents to substantiate the payments. We found his testimony credible. We find that he paid $2,000 for rent for each of these two months. Consequently, Watson is entitled to deduct $13,655 for renting Unit 711 for Skyline Motion Pictures for 2005.

c.      Rental-expense deduction for lease of a house in Los Angeles

Watson claimed a rental-expense deduction for Skyline Motion Pictures for a $2,950 payment made in 2005. At trial Watson testified that the purpose of the payment was to lease a furnished, single-family house for Skyline Motion Pictures to be used for one week of business meetings while he attended the Los Angeles International Film Festival. We found Watson's testimony credible. Consequently, Watson is entitled to deduct the $2,950 payment as a rental expense for Skyline Motion Pictures for 2005.[3]

_____

[3]Watson testified that he stayed at the house during the week. Thus, the expense could arguably be a "lodging" expense subject to the "strict-

(continued...)

2.      Contract-labor-expense deductions for 2005 and 2006

As discussed more fully below, we hold that Watson is entitled to contract-labor-expense deductions of:

- $75,153 for Skyline Motion Pictures for 2005,

- $14,778 for Skyline Movement for 2006, and

- $8,900 for Liberation Financial for 2006.

a.      Contract-labor-expense deduction for Skyline Motion Pictures for 2005

Watson claimed a contract-labor-expense deduction of $85,843 on the Schedule C for Skyline Motion Pictures for 2005.  The IRS disallowed the deduction in full.  At trial and on brief Watson asserted that he is entitled to a contract-labor expense deduction of $81,767 for Skyline Motion Pictures for 2005. However, during trial Watson conceded that four expenses included in the $81,767 totaling $2,906 are not deductible.  These expenses included:  (1) a check dated January 4, 2005, written to Ben Goldhirsh for $353; (2) a check dated April 10, 2005, written to Commercial Edison for $141; (3) a check dated October 11, 2005, written to A B Chicagoland for $500; and (4) a check dated June 22, 2005, written

---

[3](...continued)
substantiation" requirements of sec. 274(d)(1) and sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  However, the IRS did not challenge the deduction on this ground.

to Duo Consulting for $1,912, which was counted twice in the $81,767 total. We therefore consider that it is Watson's position that the deductible amount of this category of expenses is $81,767 minus $2,906, or $78,861. The IRS disputes the deductibility of any contract-labor expenses for Skyline Motion Pictures for 2005.

To document those expenses Watson provided numerous copies of checks, cleared-check images, partial bank statements, and a few invoices. Watson also provided copies of the non-disclosure agreements that he entered into with some of the contract laborers for Skyline Motion Pictures. The copies of checks, cleared-check images, bank statements, and invoices that Watson provided substantiate the amounts he paid as contract-labor expenses for Skyline Motion Pictures for 2005. Furthermore, Watson credibly testified to the business purpose for nearly all of the contract-labor expenses for Skyline Motion Pictures for 2005 for which he seeks a deduction; only a few of the expenses reported for Skyline Motion Pictures appear to be nondeductible.

On the basis of Watson's credible testimony and the corroborating documentary evidence, we hold that he is entitled to a contract-labor-expense deduction of $75,153 for Skyline Motion Pictures for 2005. The following table summarizes the deductibility of the contract-labor expenses for Skyline Motion Pictures for 2005:

| | Skyline Motion Pictures (2005) Contract-labor expenses ($81,767 claimed on brief) | | |
|---|---|---|---|
| Payee | Amount claimed on brief | Amount deductible | Reasoning |
| A B Chicagoland | $500 | -0- | Watson conceded at trial |
| Ben Goldhirsh | 353 | -0- | Watson conceded at trial |
| Brian Bubser | 1,750 | $1,750 | Expense of designing Skyline's website |
| Com Ed | 141 | -0- | Watson conceded at trial |
| Design 4 U | 585 | -0- | Watson testified that the expense was to install 17 curtains in Unit 1406, which was his personal residence at the time. This is a non-deductible personal expense.[1] |
| Duo Consulting | 3,824 | 1,913 | Expense was included twice |
| Jelena Zanko | 27,575 | 27,575 | Consulting, promotional, marketing, creative, and writing services |
| Jelena Zanko | 104 | 104 | Reimbursement to Jelena Zanko for her payment of Skyline Motion Pictures' business expenses |
| Jonathan Jacobs | 4 | -0- | Watson could not remember purpose |
| M W Design | 600 | 600 | Design services and print coordination |
| Mike Laha | 5,084 | 5,084 | Consulting services; provided advice on the film industry, including production, budgeting, and screenwriting |
| Mike Laha | 170 | 170 | Reimbursement to Mike Laha for his payment of Skyline Motion Pictures' business expenses |
| Nicole Cavallo | 21,025 | 21,025 | Consulting services |
| Nicole Cavallo | 20 | 20 | Reimbursement to Nicole Cavallo for her payment of Skyline Motion Pictures' business expenses |

| | | | |
|---|---|---|---|
| Patrick Loughman | 1,250 | 1,250 | Consulting service for the film industry |
| Patrick Loughman | 1,500 | -0- | The memo line on the check reads "Personal loan" and Watson did not present evidence sufficient to overcome the implication that this is not deductible.[1] |
| Paul Niemeyer of Niemeyer Illustrations | 5,750 | 5,750 | Artwork services, designed a movie poster |
| Proline Mechanical Inc. | 158 | 158 | Service call to balance the bulb in a projector Watson used for business presentations |
| Quist Interactive | 7,500 | 7,500 | Web design and development services |
| SPOT Animation | 1,000 | 1,000 | Animation services; created a marketing trailer |
| Tony Gonzalez | 1,620 | -0- | Watson testified that this expenses was for electrical work done in Unit 1406, which was his personal residence at the time. This is a non-deductible personal expense.[1] |
| Tony Gonzalez | 1,255 | 1,255 | Electrical work for communications in Unit 711, which was Watson's office at the time. |
| Total | 81,767 | 75,153 | |

[1] See sec. 262(a).

b.      Contract-labor-expense deduction for Skyline Movement for 2006

Watson claimed a contract-labor-expense deduction of $26,870 on the

Schedule C for Skyline Movement for 2006. The IRS disallowed the deduction in

full. At trial and on brief Watson contended that he is entitled to a contract-labor

expense deduction of only $14,778 for Skyline Movement for 2006. The IRS

disputes the deductibility of any contract-labor expenses for Skyline Movement for 2006.

To document the contract-labor expenses for Skyline Movement for 2006, Watson submitted numerous copies of checks, cleared-check images, and bank statements from his personal bank account. These substantiate the amounts Watson paid as contract-labor expenses for Skyline Movement for 2006. Furthermore, Watson credibly testified to the business purpose for all of the contract-labor expenses for Skyline Movement for 2006 for which he seeks a deduction.

On the basis of Watson's credible testimony and the corroborating documentary evidence, we hold that Watson is entitled to a contract-labor-expense deduction of $14,778 for Skyline Movement for 2006. The following table summarizes the deductibility of the contract-labor expenses for Skyline Movement for 2006:

| Skyline Movement (2006) Contract-labor expenses ($14,778 claimed on brief) | | | |
|---|---|---|---|
| Payee | Amount claimed on brief | Amount deductible | Reasoning |
| Jacob Watson | $630 | $630 | Business artwork services; creation of artwork for She Beads, which was a business Watson consulted for in 2005. |

| Jelena Zanko | 13,425 | 13,425 | Business marketing, writing, and consulting services |
|---|---|---|---|
| Kurt Kroeck | 400 | 400 | Business artwork services |
| Nicole Cavallo | 323 | 323 | Business marketing and consulting services |
| Total | 14,778 | 14,778 | |

    c.    <u>Contract-labor-expense deduction for Liberation Financial for 2006</u>

Watson claimed a contract-labor-expense deduction of $45,548 on the Schedule C for Liberation Financial for 2006. The IRS disallowed the deduction in full. At trial and on brief Watson contended that he is entitled to a contract-labor-expense deduction of $60,582 for Liberation Financial for 2006. The IRS disputes the deductibility of any contract-labor expenses for Liberation Financial for 2006.

To document the contract-labor expenses for Liberation Financial for 2006, Watson provided numerous copies of checks, cleared-check images, and bank statements. These substantiate some of the amounts that Watson claims he paid as contract-labor expenses for Liberation Financial for 2006. Furthermore, Watson credibly testified to the business purpose for some of the contract-labor expenses for Liberation Financial for 2006 for which he seeks a deduction.

However, for many of the contract-labor expenses that Watson reported for Liberation Financial for 2006, it appears to us, on the basis of his testimony and

the memorandum lines on several of the checks that he provided as proof of payment, that all the payments he made to Melissa DeSitter, Ben Goldhirsh, Dominic Garner, Jonathan Jones, Reginald Ray, and Tony Gonzalez are related to his employment. In 2006 Watson was employed as a loan originator by First Capital Mortgage. Liberation Financial was in the business of management consulting and advised primarily mortgage companies, including First Capital Mortgage, in order to help improve the overall performance of each company and its loan officers. Watson asserted that none of the expenses he claims as deductions for Liberation Financial were related to his employment as a loan originator for First Capital Mortgage. The payments that Watson made to Melissa DeSitter, Ben Goldhirsh, Dominic Garner, Jonathan Jones, Reginald Ray, and Tony Gonzalez all appear to be for services these individuals performed in connection with his employment as a loan originator. These expenses are deductible only if Watson could not seek reimbursement from his employer. See Podems v. Commissioner, 24 T.C. at 23. The record does not support the proposition that Watson could not seek reimbursement for these expenses. Therefore they are not deductible.

On the basis of Watson's credible testimony with respect to some of these expenses and corroborating documentary evidence, we hold that he is entitled to a

contract-labor-expense deduction of $8,900 for Liberation Financial for 2006.

The following table summarizes the deductibility of the contract-labor expenses

that Watson reported for Liberation Financial for 2006:

| Liberation Financial (2006) Contract-labor expenses ($60,582 claimed on brief) | | | |
|---|---|---|---|
| Payee | Amount claimed on brief | Amount deductible | Reasoning |
| Ben Goldhirsh | $663 | -0- | Watson testified that Ben Goldhirsh provided loan-processing services in the mortgage loan business and that expenses paid to Goldhirsh were incurred on behalf of his employer. These expenses appear to be related to Watson's employment as a loan originator and not his Schedule-C business of management consulting. |
| Brian Bubser | 2,000 | $2,000 | Website and graphic design |
| Dominic Garner | 14,650 | -0- | Watson testified that Dominic Garner performed "[l]ead generation, communication with borrowers, going and getting applications signed, picking up documents". The memo lines on all the checks read "Advance". These expenses appear to be related to Watson's employment as a loan originator and not his Schedule-C business of management consulting. |
| Holly Bartle | 250 | 250 | Promotional work |
| Jacob Watson | 1,200 | 1,200 | Marketing, design, and artwork services |
| Jelena Zanko | 3,000 | 3,000 | Marketing and writing services |
| Jennifer McCullah | 250 | 250 | Promotional work |
| Jonathan Jones | 8,065 | -0- | Watson testified that Jonathan Jones performed services that were "very similar to Dominic Garner". The memo lines on the checks read |

| | | | |
|---|---|---|---|
| | | | either "Commissions" or "advance". These expenses appear to be related to Watson's employment as a loan originator and not his Schedule-C business of management consulting. |
| Kurt Kroeck | 1,700 | 1,700 | Marketing, design, and artwork services |
| Leticia Winn | 250 | 250 | Promotional work |
| Melissa DeSitter | 26,554 | -0- | Watson testified that Melissa DeSitter was like an executive assistant for his consulting business and that she "sent out and confirmed that lead mailing campaigns were going out, dealt with borrowers, dealt with lead companies" and "communicat[ed] with borrowers, lenders, title companies, prospects, closing agents in the mortgage consulting business". The few memo lines available read "[Month] Bonus". These expenses appear to be related to Watson's employment as a loan originator and not his Schedule-C business of management consulting. |
| Nicole Cavallo | 500 | -0- | The memo line on this check reads "repayment of loan". This suggests that the payment was the repayment of loan principal, which is nondeductible. Watson did not testify what this payment was for. |
| Reginald Ray | 350 | -0- | Watson testified that Reginald Ray "provided some sort of closing activities with a borrower". These expenses appear to be related to Watson's employment as a loan originator and not his Schedule-C business of management consulting. |
| Satin Grable | 250 | 250 | Promotional work |
| Tony Gonzalez | 900 | -0- | Watson testified that this expense was to have electrical work done, but he could not remember where it was done; the work may have been done at Unit 711 or at his employer's office. These expenses appear to be expenses Watson paid on behalf of his employer. |
| Total | 60,582 | 8,900 | |

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.